RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0089p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CYNTHIA LAMBERT,

        *Plaintiff-Appellant,*

    *v.*

GREG HARTMAN, in his official capacity as Clerk of Courts, and HAMILTON COUNTY BOARD OF COUNTY COMMISSIONERS,

        *Defendants-Appellees.*

No. 07-3154

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 04-00837—Michael H. Watson, District Judge.

Argued: January 30, 2008

Decided and Filed: February 25, 2008

Before: GUY, GILMAN, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Marc D. Mezibov, LAW OFFICE OF MARC MEZIBOV, Cincinnati, Ohio, for Appellant. Pamela J. Sears, HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Marc D. Mezibov, Christian A. Jenkins, Stacy Ann Hinners, LAW OFFICE OF MARC MEZIBOV, Cincinnati, Ohio, for Appellant. Pamela J. Sears, Michael G. Florez, HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellees.

---

## OPINION

---

    RONALD LEE GILMAN, Circuit Judge. Cynthia Lambert appeals the district court's dismissal of her complaint against Greg Hartmann in his official capacity as the Hamilton County Clerk of Courts (the "Clerk") and against the Hamilton County Board of County Commissioners (the "County") (collectively the "Defendants"). In September of 2003, Lambert received a traffic citation for speeding. She later discovered that this citation, which contained personal identifying information (including her Social Security number), had been published on the Clerk's public website.

    Lambert sued the Defendants pursuant to 42 U.S.C. § 1983, claiming that the publication of the citation violated her constitutional right to privacy under the Fourteenth Amendment to the U.S.

Constitution. She further asserted that her identity had been stolen by a third party as a direct result of the Clerk's publication of the citation, and that she had consequently suffered economic damages, damage to her personal credit rating, and damage to her reputation. Lambert also raised state-law claims and sought to certify her complaint as a class action.

The Defendants moved to dismiss Lambert's complaint on the basis that she had failed to state a claim under § 1983. Concluding that Lambert's § 1983 claim must fail because her alleged privacy interest was not of a constitutional dimension, the district court granted the Defendants' motion. The court then dismissed her pendent state-law claims without prejudice. Lambert argues that the court erred in dismissing her complaint and renews her claim that the Defendants violated her constitutional right to privacy. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.    Factual background

In September of 2003, Lambert received a traffic citation for speeding in Hamilton County, Ohio. The issuing officer completed an Ohio Uniform Traffic Ticket, a form used throughout Ohio that includes a person's name, signature, home address, birth date, driver's license number, and Social Security number. One copy of the citation was given to Lambert and another was filed with the Clerk's Office. Approximately a year after she received the citation, Lambert was contacted by two retail stores about suspicious purchases that had been made in her name. The individual who made the purchases presented a driver's license that displayed Lambert's full name, home address, birth date, driver's license number, and Social Security number.

During her conversations with the retailers, Lambert was informed that the identity thief might have gained access to her personal information through the Clerk's website. Lambert then looked on the internet and discovered that the Clerk's publicly accessible site made it possible to search and locate traffic citations that retained all of an individual's identifying information, including his or her Social Security number. When Lambert examined her citation on the website, she realized that, like the fake identification used by the identity thief, the citation contained a driver's license number that was incorrect by one digit. Lambert promptly called the Clerk's Office to complain about the publication of her personal information. The Clerk's Office refused to remove the information, explaining to Lambert that the records were made public for the convenience of the parties and that to remove the records "would require vast amounts of manpower."

Lambert filed suit against the Defendants in December of 2004. By that time, law enforcement officials had apprehended a group of individuals who had gained access to the personal information of numerous people found on the Clerk's website and had used that information to commit identity theft. The police informed Lambert that they had arrested a person who was a part of that ring, a woman who later admitted that she was the thief who stole Lambert's identity from the Clerk's website. That woman was later charged with a conspiracy to commit identity theft, convicted, and sentenced to 139 months' imprisonment for her actions.

### B.    Procedural background

Lambert's claim under 42 U.S.C. § 1983 alleged that the Clerk's policy and practice of publishing personal information on a public website violated her Fourteenth Amendment right to privacy, in addition to her Fourth Amendment right to be free from unreasonable searches and seizures, and her Fourteenth Amendment rights to substantive and procedural due process. She contended that, as a result of the Clerk's policy, she had suffered "economic damages, damages to her personal credit rating, and damage to her reputation." Lambert also raised claims under the common law of Ohio for violation of her right to privacy and the tort of publication of private facts.

Finally, she requested the certification of a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a putative class of "hundreds of thousands" of people whose Social Security numbers had been published on the Clerk's website.

Lambert originally sought declaratory relief, compensatory damages, and an injunction to prevent the publication of the personal information in question. She later sought leave to amend her complaint, removing her demand for compensatory damages and substituting instead a request for "uniform, class-wide relief in the form of a credit monitoring fund or other prophylactic measure to detect or prevent potential identity theft."

The Defendants moved to dismiss Lambert's complaint, arguing, among other things, that she had failed to state a claim upon which relief could be granted. In December of 2006, the district court entered an order granting the Defendants' motion and dismissing all of Lambert's claims. The court reviewed Sixth Circuit precedent addressing the constitutional right to privacy of personal information and concluded that Lambert's claim was without merit because the privacy interest she asserted did "not implicate either a fundamental right or one implicit in the concept of ordered liberty." Noting that Lambert identified only a "risk of financial harm," the court determined that this injury "bears no equivalence to the potential and actual harm" suffered by the plaintiffs in cases where the Sixth Circuit has recognized a Fourteenth Amendment right to privacy against the disclosure of personal information. The district court therefore agreed with the Defendants that Lambert's claim failed to state a claim under 42 U.S.C. § 1983, concluded that a ruling on her proposed amended complaint was unnecessary, and declined to exercise supplemental jurisdiction over her state-law claims. This timely appeal followed.

## II. ANALYSIS

### A.     Standing

The Defendants assert that because Lambert is no longer seeking compensatory damages and "limits her remedy to credit monitoring relief," she does not have standing to bring her claim. Their contention on this point is somewhat confusing, interchangeably arguing that Lambert's injury is not fairly traceable to the publication of her Social Security number and that "the injury of identity theft in the future is too speculative and conjectural to entitle her to [credit-monitoring] relief." Lambert has failed to address the Defendants' challenge, but we nevertheless conclude that she has standing to bring her claim.

To bring a claim in federal court, a plaintiff "must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). This burden can be met by Lambert showing that "(1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) [her] injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that [her] injury will be redressed by a favorable decision." *See Daubenmire v. City of Columbus*, 507 F.3d 383, 388 (6th Cir. 2007) (internal quotation marks omitted).

Lambert has alleged that her identity was stolen and that her financial security and credit rating suffered as a result. She also claims that because of the nature of identity theft, she has been exposed to the risk that people have accessed her personal information on the internet and will be able to use that information to commit future acts of identity theft against her. Although this latter injury is somewhat "hypothetical" and "conjectural," her actual financial injuries are sufficient to meet the injury-in-fact requirement. *See Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 294 (6th Cir. 2006) (noting that "[t]his Court has explicitly held that" certain types of economic injuries are sufficient to confer standing).

Indeed, the Defendants do not dispute that Lambert has been injured. They instead attack her standing on the basis that her injuries are not fairly traceable to the Clerk's website. Specifically, they argue that the harm suffered by Lambert was caused by an intervening act—the criminal act of a third party. They therefore claim that Lambert has not met the second prong of the standing test because she is unable to demonstrate that her injuries are fairly traceable to the Defendants.

The Defendants are correct in pointing out that a third party was undoubtedly the *direct* cause of Lambert's injuries. But because both the traffic citation and the fake identification used to make purchases in Lambert's name contained the identical, incorrect driver's license number, Lambert was able to link the act of identity theft to the personal information that was made available by the Clerk. Moreover, the identity thief (who was indicted and convicted before the district court dismissed Lambert's case) acknowledged that she had taken Lambert's personal information from the Clerk's website. Lambert thus alleged sufficient facts to show that her injuries were fairly traceable to the publication of her personal information by the Clerk. *See Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 261 (1977) (explaining that the cause of the plaintiff's asserted injury may be indirect so long as the complaint indicates "that the injury is indeed fairly traceable to the defendant's acts or omissions").

The Defendants also challenge the relief sought by Lambert. They argue that the credit-monitoring fund requested by Lambert would remedy neither her past injury of "publication" nor her potential injury of "future identity theft." The Defendants cite a number of cases that, according to their interpretation, support the contention that Lambert does not have standing. But only one of these cases even addresses standing, and in that case the Sixth Circuit concluded that the plaintiff *had* pled facts sufficient to confer standing. *See Sutton v. St. Jude Medical S.C., Inc.*, 419 F.3d 568, 575 (6th Cir. 2005) (concluding that the plaintiff had standing to seek medical testing and monitoring allegedly made necessary by the increased risk of future harm created by a heart-valve implant).

Indeed, the Defendants mischaracterize both the injury that Lambert has alleged and the nature of the relief that she seeks. Lambert claims that the past identity theft has damaged her credit rating and that the publication of her personal information has exposed her to a risk of future identity theft. This court's decision in *Sutton* undermines, rather than supports, the Defendants' contention that a monitoring fund would not redress these injuries. We explained in *Sutton* that if the plaintiff could prove that the implanted heart valve had increased the future risk to his health, "medical monitoring [would] undoubtedly help to remedy the situation." *Id.* Likewise, if Lambert were able to prove that she continues to face an increased risk of identity theft, she could likely show that monitoring suspicious activity on her credit report would not only combat that future risk, but would also help to redress the past financial injury that she has suffered. For these reasons, we conclude that Lambert has standing to bring her claims.

## B.       Immunity claims

The Defendants also raise a number of immunity defenses as an alternative ground for rejecting Lambert's claims. Although Lambert acknowledges that her opponents raised these claims before the district court and on appeal, she declined to address them in either of her briefs or during oral argument. The district court likewise declined to consider any of these arguments, resting its dismissal of Lambert's claims on the merits. Because we agree with the district court's disposition of this case on the merits, we similarly see no need to address the Defendants' immunity arguments. *See, e.g.*, *Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 477 (6th Cir. 2006) (explaining that where, as here, a defendant declines to raise Eleventh Amendment immunity as a threshold defense, "federal courts have discretion to address the sovereign-immunity defense and the merits in whichever order they prefer").

**C.     Lambert's § 1983 claim**

*1.     Standard of review*

We review de novo the district court's decision to grant a defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Dubay v. Wells*, 506 F.3d 422, 427 (6th Cir. 2007). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). We must therefore construe the complaint in a light most favorable to Lambert and accept all of her factual allegations as true. *See Dubay*, 506 F.3d at 427. Although the factual allegations in a complaint need not be detailed, they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1964-65 (2007)).

*2.     Municipal liability under 42 U.S.C. § 1983*

A prima facie case under § 1983 has two elements: "(1) the defendant must be acting under the color of state law, and (2) the offending conduct must deprive the plaintiff of rights secured by federal law." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). To succeed on a § 1983 claim against a local government, the plaintiff must also prove that the injury about which she complains was caused by an unconstitutional government policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.").

There is no question, of course, that the Defendants acted under color of state law in making Lambert's traffic citation available on the internet. But the Defendants maintain that they cannot be held liable for Lambert's injuries because they were caused by a third party, the identity thief. Although they do not frame it as such, this position is in essence an attack on Lambert's ability to show that the violation she alleges was "committed by a person acting under color of state law." *See Harbin-Bey v. Rutter*, 420 F.3d 571, 575, 577 (6th Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)) (holding that a prison's classification of an inmate as a security threat due to his gang affiliation did not constitute an equal protection violation). We have determined, however, that a § 1983 plaintiff can "circumvent the state action requirement if he demonstrated that the state created a special danger" in releasing private information that leads to harm. *Barber v. Overton*, 496 F.3d 449, 453-54 (6th Cir. 2007) (explaining that a plaintiff could meet the state-action requirement by demonstrating that the state's disclosure put the plaintiff at risk, but declining to reach that question because the prison guards challenging the release of their personal information by prison officials to prisoners had not demonstrated a constitutional violation of their rights to privacy); *see also Kallstrom v. City of Columbus*, 136 F.3d 1055, 1063 (6th Cir. 1998) (holding that police officers' privacy interest in their personnel files were of a constitutional dimension where the city "created a very real threat to the officers' and their family members' personal security and bodily integrity, and possibly their lives").

Moreover, Lambert sued the Clerk in his official capacity, which is the equivalent of suing the Clerk's employer, the County. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." (alteration in original) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985))). The only issue in the present case, then, is whether the Clerk's actions, as alleged in

Lambert's complaint, were part of a policy or custom that violated Lambert's constitutional right to privacy.

### 3.        *The scope of the constitutional right to privacy*

Two types of interests have been identified by the Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment. One is the interest in "independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599-600 & n.26 (1977) (noting that these decisions have been characterized as dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education" (quoting *Paul v. Davis*, 424 U.S. 693, 713 (1976))). The other type of privacy interest applicable to individuals is the "interest in avoiding disclosure of personal matters." *Id.* at 599, 603-04 (recognizing that a statute requiring that the state be provided with a copy of certain drug prescriptions implicated the individual's interest in nondisclosure, but upholding the law because the statute contained adequate security measures); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 465 (1977) (assuming that President Nixon had a legitimate expectation of privacy in his private communications, but upholding a federal law that provided for the review and classification of presidential materials by professional archivists). Lambert's claim implicates the latter interest, which this court has described as "an individual's right to control the nature and extent of information released about that individual" and that "has been coined an informational right to privacy." *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998).

This court, in contrast to some of our sister circuits, "has narrowly construed the holdings of *Whalen* and *Nixon* to extend the right to informational privacy only to interests that implicate a fundamental liberty interest." *Id.* at 684. A plaintiff alleging a violation of her right to informational privacy must therefore demonstrate that "the interest at stake relates to 'those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty.'" *Id.* (quoting *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981)). Only after a fundamental right is identified should the court proceed to the next step of the analysis— the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private. *See Kallstrom*, 136 F.3d at 1061 ("This circuit . . . will only balance an individual's interest in nondisclosure . . . against the public's interest in and need for the invasion of privacy where the individual privacy interest is of constitutional dimension.").

Applying these standards, this court has recognized an informational-privacy interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm (*Kallstrom*), and (2) where the information released was of a sexual, personal, and humiliating nature (*Bloch*). In *Kallstrom*, the plaintiffs were undercover police officers who had been actively involved in a drug-conspiracy investigation of a violent gang and who had subsequently testified at trial against a number of the gang's members. 136 F.3d at 1059. During the trial, the city—despite having promised to keep the officers' personnel records confidential—released the officers' records to defense counsel. The records contained, among other personal information, the names and addresses of the officers, their immediate family members, and their personal references. *Id.*

This court in *Kallstrom* concluded that the officers' privacy interests were of constitutional dimension because they implicated a fundamental interest "in preserving their lives and the lives of . . . their family members, as well as preserving their personal security and bodily integrity." *Id.* at 1062. That conclusion was supported by a long line of cases, dating back to the nineteenth century, in which courts have held that individuals have a constitutional right to avoid the kind of *physical* invasions or abuse that "strip[] the very essence of personhood." *Id.* at 1063 (internal quotation marks omitted). The *Kallstrom* court's holding therefore rested on the finding that the city's disclosure had created a risk that the officers' personal information might "fall into the hands

of persons likely to seek revenge upon the officers" and had created a "very real threat" to the officers' and their family members' bodily integrity and possibly even their lives. *Id.*

In *Bloch*, this court considered whether the constitutional right to informational privacy was triggered by a press conference in which the sheriff released the "highly personal and extremely humiliating details" of the rape to which Bloch had been subjected, some of which were "so embarrassing she had not even told her husband." *Bloch*, 156 F.3d at 676. The court concluded that Bloch could invoke her Fourteenth Amendment right to privacy because "sexuality and choices about sex, in turn, are interests of an intimate nature which define significant portions of our personhood." *Id.* at 685.

As in *Kallstrom*, this court's holding in *Bloch* was premised on the notion that the disclosure of private sexual information implicated a "fundamental right or one implicit in the concept of ordered liberty"—namely the fundamental right of privacy in one's sexual life. *Id.* at 684, 686. The clear principle emerging from *Bloch* is that the sheriff's publication of the details of Bloch's rape implicated her right to be free from governmental intrusion into matters touching on sexuality and family life, and that to permit such an intrusion would be to strip away the very essence of her personhood. *See id.* at 685 (citing *Thorne v. City of El Segundo*, 726 F.2d 459, 468 (9th Cir. 1983), for the proposition that an individual's privacy right in her sexual activities "follow[ed] from the cases holding that such basis matters as contraception, abortion, marriage, and family life are protected by the constitution from unwarranted government intrusion").

### 4.        *Lambert's claim of a constitutional deprivation*

In the face of the Sixth Circuit's restrictive view of informational privacy, Lambert makes two principal arguments to support her assertion that the district court erred in dismissing her complaint. She first claims that the district court's analysis was flawed because "[t]he proper framework should be whether the claimant has a 'reasonable expectation of privacy' in the information he or she wants to keep private, and, if so, whether the government has any legitimate interest in disclosing such information to weigh against the individual interest in disclosure." Second, she contends that the court erred in concluding that the Clerk's publication of her traffic citation on the internet did not implicate a fundamental right.

### a.        *Request for a new standard*

Lambert's first argument is a request for us to adopt a new approach to assessing informational privacy claims—one that does not require the court to first determine whether the privacy interest implicates a fundamental right. The reasonable-expectation-of-privacy standard that Lambert proposes is in many ways similar to the more fluid approach that other circuits have adopted for assessing claims of informational privacy. *See Kallstrom*, 136 F.3d at 1061 n.1 (citing cases in support of the proposition that "[o]ther circuits have interpreted *Whalen* and *Nixon* as creating a broad constitutional right to informational privacy to be balanced against the public's interest and need for the invasion of privacy"); *cf.* Helen L. Gilbert, Comment, *Minors' Constitutional Right to Informational Privacy*, 74 U. Chi. L. Rev. 1375, 1382 (2007) (contrasting the Sixth Circuit's approach to informational privacy with other circuits that do not require the implication of a fundamental liberty interest, and instead "decide if the party alleging an invasion of privacy has a legitimate expectation of privacy in the information in question").

Employing this standard, Lambert argues that she has a reasonable expectation of privacy in her Social Security number, and that the district court therefore erred in failing to balance that interest against the Defendants' interest in publishing unredacted public records on the internet. Lambert is of course correct in pointing out that both Congress and the courts have recognized the privacy interest in one's Social Security number. *See, e.g.*, Privacy Act of 1974, 5 U.S.C. § 552a (providing restrictions on the disclosure of Social Security numbers); *Sherman v. U.S. Dep't of the*

*Army*, 244 F.3d 357, 365 (5th Cir. 2001) (noting, in the context of a Freedom of Information Act request, that "an individual's informational privacy interest in his or her SSN [Social Security number] is substantial"); *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999) (recognizing that "the indiscriminate public disclosure" of Social Security numbers might implicate the constitutional right to privacy, but concluding that any interest in nondisclosure was outweighed by the government's interest in making bankruptcy documents available to the general public).

The Sixth Circuit, however, has developed and applied a different approach to assessing informational privacy claims. As discussed above, that approach requires that the asserted privacy interest implicate a fundamental right. *See Bloch*, 156 F.3d at 684; *DeSanti*, 653 F.2d at 1090 (holding that the disclosure of juveniles' records to juvenile court personnel did not implicate the plaintiffs' fundamental rights); *Kallstrom*, 136 F.3d at 1061-62 (explaining that the *DeSanti* court "rejected the notion of a general constitutional right of nondisclosure of personal information against which the governmental action must be weighed"). We are bound by those decisions unless this court sitting en banc or the Supreme Court holds otherwise, and Lambert's argument must fail for that reason. *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir.1985) (explaining that the decision of a prior panel "remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision").

### b.          *Existence of a fundamental right*

The district court recognized that this court's precedents require a showing of a privacy interest that implicates a right that is either "fundamental" or "implicit in the concept of ordered liberty." *See Bloch*, 156 F.3d at 684. After reviewing *Kallstrom* and *Bloch*, it concluded that Lambert could not meet this standard because she had "only identified a risk of financial harm." This harm, the court noted, "bears no equivalence to the potential and actual harm suffered by the *Kallstrom* and *Bloch* plaintiffs, respectively." The court therefore refused to balance Lambert's privacy interest against the Defendants' interest in making public records available on the internet. Lambert disputes the district court's conclusion that her harm does not meet the first prong of the test for informational-privacy claims, arguing that the Defendants' invasion of her privacy implicates her fundamental rights.

There are two ways for Lambert to demonstrate that a fundamental right underlies her privacy claim. The first would be to link her interest in nondisclosure to an already established fundamental right. Indeed, this is how the plaintiffs in *Kallstrom* and *Bloch* succeeded. *See Bloch*, 156 F.3d at 685 (acknowledging the well-recognized right to privacy in intimate matters); *Kallstrom*, 136 F.3d at 1062-63 (describing the long history of the right to bodily integrity). Lambert attempts to make this showing by claiming that, like the police officers in *Kallstrom*, her fundamental liberty interest in personal security was compromised by the Clerk's actions.

Alternatively, Lambert could attempt to identify a new fundamental right that was implicated by the public disclosure of her Social Security number. Because the very notion of a fundamental right is rooted in substantive due process, such rights must be based on a protectible interest in life, liberty, or property. *See Does v. Munoz*, 507 F.3d 961, 965 (6th Cir. 2007) (explaining that some deprivations of life, liberty or property are subject to substantive limitations that provide "heightened protection against government interference with certain fundamental rights" (citations and internal quotation marks omitted)). But this court has recognized that "identifying a new fundamental right subject to the protections of substantive due process is often an uphill battle, as the list of fundamental rights is short." *Id.* (internal quotation marks omitted). Any fundamental right, moreover, must be either "deeply rooted in this Nation's history and tradition" or "implicit in the concept of ordered liberty." *Id.* (internal quotation marks omitted).

Lambert asserts that the privacy invasion she has alleged is related to (1) her right to personal security, (2) her right to her reputation and good name, and (3) her right to property. She describes the first two as fundamental liberty interests, and the third as a fundamental property interest.

### i.        *Liberty interests*

Lambert asserts that the disclosure of her Social Security number implicates two liberty interests. First, she characterizes the theft of her identity as an interference with the right to personal security recognized in *Kallstrom*. She then describes the damage to her credit rating as an injury to her reputation, which she claims this court has recognized as a fundamental liberty interest.

Lambert's attempt to characterize the Clerk's action as an interference with her right to personal security as discussed in *Kallstrom* is unpersuasive. The *Kallstrom* court unambiguously identified the right involved in that case as one of personal security and bodily integrity, making clear that the fundamental right at issue was a protection against *physical* invasions. Indeed, the court in *Kallstrom* noted that not even all risks of physical harm created by disclosure would trigger the right to privacy under the Fourteenth Amendment. Rather, the officers in that case could invoke constitutional protection only because they were placed "at substantial risk of serious bodily harm, possibly even death, from a perceived likely threat." *Kallstrom*, 136 F.3d at 1064.

Lambert does not argue that the Clerk's actions put her at any risk of physical harm. And although she is undoubtedly correct that identity theft constitutes a serious personal invasion, it simply does not implicate the well-established right to personal security as contemplated by this court in *Kallstrom*. *Cf. Barber v. Overton*, 496 F.3d 449, 456 (6th Cir. 2007) (declining to recognize a privacy interest of a constitutional dimension where prison officials inadvertently released the Social Security numbers of prison guards to inmates, and concluding that "the release of the social security numbers was not sensitive enough nor the threat of retaliation apparent enough to warrant constitutional protection here").

Lambert next claims that the harm to her "creditworthiness" constitutes a reputational injury that implicates a fundamental liberty interest. Despite the obvious reputational interests at play in *Bloch*, Lambert makes no attempt to analogize her harm to that of the injury suffered by the rape victim in that case. She instead relies on this court's decision in *Chilingirian v. Boris*, 882 F.2d 200 (6th Cir. 1989), for the proposition that "a person's reputation, good name, honor, and integrity are among the liberty interests" protected by the Fourteenth Amendment. *Id.* at 205 (citing *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972)).

Even accepting the questionable assertion that one's credit rating is the type of reputational interest protected by the Due Process Clause of the Fourteenth Amendment, the fact that this court has recognized a liberty interest in one's reputation does not necessarily mean that such an interest is either "fundamental" or "inherent in the concept of ordered liberty." *Cf. Does*, 507 F.3d at 965 (explaining that substantive due process protects only "certain fundamental rights and liberty interests," and noting that the "list of fundamental rights is short" (internal quotation marks omitted)). Moreover, the plaintiff in *Chilingirian* brought a *procedural* due process claim, and this court concluded that an informal "name-clearing hearing" provided sufficient protection of the plaintiff's liberty interest in his reputation. *Chilingirian*, 882 F.2d at 205-06. But the very fact that an informal hearing was sufficient to protect Chilingirian's liberty interest in his reputation negates Lambert's claim that the interest involved was fundamental. *See Does*, 507 F.3d at 964 (noting that certain deprivations of liberty fundamental enough to violate a person's right to substantive due process "are subject to limitations *regardless of the adequacy of the procedures employed*" (emphasis added) (internal quotation marks omitted)).

Lambert has provided no support for the proposition that the harm to her credit implicates a liberty interest that any court has recognized as fundamental, and her argument to the contrary is

simply unpersuasive. Furthermore, she does not even begin to meet the hurdle required for the recognition of a *new* fundamental right. The protection of a person's credit is a concept relating to one's finances and economic well-being, one that by its very nature bears no relationship to the kinds of interests that are "implicit in the concept of ordered liberty." *See Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 575 (6th Cir. 2002) (affirming the denial of a preliminary injunction to a county employee who challenged a policy mandating public disclosure of real estate holdings because "[t]he privacy interest one may have in one's personal finances and real estate holdings is far afield from [the] intimate concerns" recognized as fundamental privacy interests); *cf. Cutshall v. Sundquist*, 193 F.3d 466, 481 (6th Cir. 1999) (rejecting a challenge to a state sex-offender registry on constitutional privacy grounds because the law did "not impose any restrictions on [the plaintiff's] personal rights that are fundamental or implicit in the concept of ordered liberty, such as his procreative or marital rights"). We therefore agree with the district court that Lambert's injuries are more properly described as financial in nature and not truly liberty interests at all.

### ii.        *Property interest*

Although this court has never acknowledged a constitutional right to privacy based on the infringement of a property interest, Lambert urges us to recognize such a right in this case. She contends that the Clerk's disclosure of her Social Security number implicated her "fundamental right to property," and that we should proceed to balance her privacy interest against the government's purpose in publishing records on the internet. The Defendants, in contrast, contend that *Kallstrom* and *Bloch* make clear that this court will recognize a privacy interest of constitutional magnitude only if a fundamental *liberty* interest is implicated.

Even if we were prepared to recognize a constitutional privacy interest based on a property right, Lambert's claim would fail because she has not demonstrated that she had a constitutionally protectible property interest in her personal information. *See Silver v. Franklin Twp. Bd. Of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) ("To establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally-protected property . . . interest."). Lambert never articulates precisely what property deprivation the Defendants' exacted upon her, although we presume that she is referring to the various financial injuries she suffered. The Defendants, however, are correct to point out that this court's precedents are not amenable to the recognition of a constitutional right to privacy based on the infringement of a property interest. *See, e.g.*, *Overstreet*, 305 F.3d at 575 (declining to recognize a privacy interest of constitutional dimension "in one's personal finances and real estate holdings"); *Bloch*, 156 F.3d at 684 (noting that this court has "extend[ed] the right to informational privacy only to interests that implicate a fundamental *liberty* interest" (emphasis added)).

Lambert has undoubtedly shown that, as a policy matter, the Clerk's decision to provide unfettered internet access to people's Social Security numbers was unwise. This much is evidenced by the fact that the Defendants have subsequently removed the citations in question from the website and changed the local rules to better protect sensitive personal information. But to constitutionalize a harm of the type Lambert has suffered would be to open a Pandora's box of claims under 42 U.S.C. § 1983, a step that we are unwilling to take. *See Paul v. Davis*, 424 U.S. 693, 699 (1976) (rejecting a § 1983 claim against police officials who included the plaintiff's name and mug shot on a flyer warning local merchants about possible shoplifters, and explaining that the plaintiff's legal argument "would seem almost necessarily to result in every legally cognizable injury which may have been inflicted by a state official acting under 'color of law' establishing a violation of the Fourteenth Amendment"). Indeed, absent a showing of an infringement of a right that is "fundamental or implicit in the concept of ordered liberty," this court's precedents bar an action under 42 U.S.C. § 1983 from proceeding any further. Lambert has simply failed to make such a showing.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.