NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0955n.06

No. 11-3442

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Aug 29, 2012*

LEONARD GREEN, Clerk

NORMAN HORNER,                                              )
                                                           )
    Plaintiff - Appellant,                                 )
                                                           )
v.                                                         )    ON APPEAL FROM THE UNITED
                                                           )    STATES DISTRICT COURT FOR THE
JEFFREY KLEIN, Individually and in his official            )    NORTHERN DISTRICT OF OHIO
capacity as Chief, Department of Fire and Rescue,          )
City of Perrysburg, Ohio; NELSON EVANS,                    )
Individually and in his official capacity as Mayor,        )    OPINION
City of Perrysburg, Ohio,                                  )
                                                           )
    Defendants - Appellees.                                )

Before:  MOORE, SUTTON, and STRANCH, Circuit Judges.

**JANE B. STRANCH**, Circuit Judge.  Norman Horner served as Assistant Chief for the Department of Fire and Rescue of the City of Perrysburg, Ohio.  He alleged that he was disciplined, demoted, and then terminated from his employment after he complained about the conduct of Fire Chief Jeffrey Klein.  Horner filed this lawsuit under 42 U.S.C. § 1983 against Klein, individually and in his official capacity as Fire Chief, and Nelson Evans, individually and in his official capacity as Mayor of the City.  Horner sought damages for alleged violations of his federal constitutional rights and for unlawful retaliation under Ohio state law.  The district court granted summary judgment in favor of the defendants.  For the reasons explained below, we AFFIRM.

1

## I. FACTS

Horner joined the fire department in 1985. He was promoted to Assistant Chief in 1993 and remained in that position until his employment ended in September 2008. Chief Klein worked as a firefighter under Horner's command for several years. Klein also received promotions, and in 2006 Horner and Klein were two of the six candidates for the position of Fire Chief. Klein was chosen for the top job.

Horner's legal claims spring from an incident that occurred on January 4, 2008. Chief Klein, Horner, and Tom Granata, a firefighter, were sitting together in the fire department break room. Granata referred to Chief Klein by his nickname, "Calvin." Chief Klein retorted, "Tom, when I'm in this uniform what do you call me?" Granata answered, "Chief." At that point, Chief Klein left the room, but he returned a few moments later. He danced around and rubbed his crotch up and down Granata's shoulder. Horner's own view of this incident was that Chief Klein "tried to lighten the moment" because he probably knew that he had been "a little overbearing." Granata was not offended by the episode because he thought Chief Klein acted in jest.

Four days later, Horner met with Chief Klein about a personnel issue. Horner was aware of Chief Klein's penchant for the phrase, "career enders." During the meeting, Horner said to Chief Klein, "Sir, if you want to talk about career enders, rubbing your crotch against an employee at work would be a career ender." Chief Klein acknowledged to Horner that the city administrator likely would not be pleased with his behavior. Horner alleged that, within an hour of this conversation, Deputy Chief Wade Johnson disciplined him for failing to turn in two December 2007 fire reports in a timely manner. The undisputed evidence indicates, however, that Deputy Chief Johnson had already requested these reports from Horner twice before he issued the discipline.

2

On January 18, 2008,[1] Horner met with the City's Human Resources Manager, Kelly Louderback, to discuss a number of his concerns, including Chief Klein's behavior towards Granata. After the meeting, Louderback asked Granata about the earlier incident, but Granata commented that it was "no big deal." Louderback then contacted Chief Klein, who said that he was just "horsing around." Based on the information available, Louderback did not construe Horner's complaint as a sexual harassment claim.

Horner alleged that, after meeting with Chief Klein and Louderback, he was disciplined repeatedly in retaliation for his complaints about Chief Klein's behavior. On February 28, Deputy Chief Johnson issued a written warning to Horner for violating a department policy that required Horner to dispatch a fire engine crew and a medic unit to an emergency call. Horner filed a grievance claiming that he did nothing wrong when he dispatched only a medic unit. Chief Klein rejected the grievance and upheld the discipline.

On April 22, Horner met with Louderback again to complain about numerous fire department matters, as well as his perception that Chief Klein was undertaking disciplinary actions against him in retaliation for reporting the Granata incident. Louderback notified Chief Klein of Horner's visit. She took no action on Horner's complaints because Chief Klein told her that Horner faced additional discipline. On April 25, Chief Klein disciplined Horner for meeting with Louderback about his many complaints without first following the fire department chain of command, in violation of department policy. Chief Klein later denied Horner's grievance concerning this disciplinary action.

On April 28, Chief Klein recommended to Mayor Evans, the City's former long-time Police Chief, that Horner should be suspended without pay for eight hours due to his second failure, on

---

[1]All dates hereafter refer to 2008.

April 13, to dispatch both a fire engine crew and a medic unit on an emergency call. Horner disputed the discipline, but Chief Klein denied his grievance. Mayor Evans imposed the suspension on May 5, and Horner served it on May 28.

While Mayor Evans was contemplating imposing the suspension, Horner filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") on May 2, alleging sexual harassment and retaliation. In addition to the Granata incident, Horner claimed that Chief Klein had been involved in two other sexually inappropriate incidents at the fire department many years earlier. He also complained of a negative work environment and raised various issues concerning Assistant Chief Jeffrey McPherson. Louderback and Chief Klein received notice in May that Horner had filed an administrative charge.

On May 31, Horner took command at the scene of a residential fire. He conceded that fire-fighting efforts were not progressing well by the time Chief Klein arrived. Following a heated discussion, Chief Klein relieved Horner of command. Horner alleged that Chief Klein shouted at him abusively and blamed him for the poor fire-fighting response, even though Deputy Chief Johnson and Assistant Chief McPherson were also on the scene.

Later the same evening, a journalist contacted Horner about the fire. A news story published the next day revealed that four firefighters had suffered minor injuries battling the fire. When Chief Klein asked Horner if he was the source of the information in the news article, Horner admitted that he provided the reporter with the correct street address where the fire occurred, but he denied giving the reporter any information about firefighter injuries. Upon further investigation, Chief Klein confirmed that Horner had, indeed, provided the information about injuries to the reporter.

Horner called in sick on June 3 and remained off work through the summer months. On June 4, Deputy Chief Johnson recommended to Chief Klein that Horner should be suspended for talking to the journalist, in violation of a policy requiring that all media inquiries must be referred to the fire department administration. On June 11, Horner failed to respond when an Assistant Chief summoned him by radio for assistance. Horner had not removed his name from the on-call list. On June 12, Horner applied for leave under the Family Medical Leave Act (FMLA), which the City granted retroactively to June 3.

On June 18, Chief Klein issued written discipline to Horner for failing to respond while on call, in violation of departmental policy. Horner filed a grievance concerning this discipline. On June 24, Chief Klein issued a written reprimand to Horner for speaking to the press without authority about the residential fire. Horner filed another grievance. Thereafter, Chief Klein recommended that Mayor Evans demote Horner to firefighter because of his disciplinary history and for lying about the information he disclosed to the journalist. No action was taken on these pending disciplinary matters and grievances because Horner was on FMLA leave.

On August 14, Louderback notified Horner by letter that he had used twelve weeks of FMLA leave and that he should report to work on August 29 with a medical clearance from his doctor. The letter also warned Horner that, if he failed to return to work, he would be considered absent without leave. Horner's treating psychologist released him to return to work effective August 29, but Horner worked only two or three shifts before two disciplinary hearings were held on September 4.

First, Chief Klein held a hearing on Horner's grievance concerning his failure to respond while on call on June 11. At the conclusion of that hearing, Chief Klein denied the grievance and allowed the written discipline to stand. Mayor Evans then conducted a second hearing, at which he

5

demoted Horner to firefighter effective September 12 for lying to Chief Klein about the information he provided to the news reporter about the house fire. After these two hearings, Horner sought emergency medical treatment and did not return to work on his doctor's advice.

On September 8, Louderback sent Horner a letter reminding him that he had exhausted all forms of leave and warning him that any failure to return to work would be considered absence without leave. Horner requested an additional period of unpaid leave. Mayor Evans approved the request in part, but directed Horner to return to work on September 22. When Horner did not do so, Mayor Evans sent Horner a letter on September 23 terminating his employment "for non-disciplinary reasons." The decision to terminate Horner's employment was upheld in October following a hearing at which Horner was represented by counsel. Mayor Evans rejected Horner's request at that time for an additional thirty days of unpaid leave under the firefighters' collective bargaining agreement. Mayor Evans denied that he had any knowledge in September or October that Horner claimed he was repeatedly disciplined in retaliation for confronting Chief Klein about the Granata incident.

In 2009, the OCRC found no probable cause to support Horner's administrative charge. This lawsuit followed.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) & (c). The burden to show that there are no genuine issues of material fact falls upon the defendants as the parties seeking summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Credibility determinations,

6

the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court considers the evidence presented in the light most favorable to Horner and draws all justifiable inferences in his favor. *See id.* The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of a particular legal claim to the jury or whether the evidence on the claim is so one-sided that the defendants should prevail as a matter of law. *See id.* at 251-52.

### III.  ANALYSIS

**A.  Federal claim**

To succeed under § 1983, Horner must prove that Chief Klein and Mayor Evans acted under color of state law and that their conduct deprived him of rights secured by the United States Constitution or federal law. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Although Horner generally alleged in his complaint that the actions of Chief Klein and Mayor Evans abridged his First, Fifth, and Fourteenth Amendment rights, Horner did not specify in the complaint, nor did he develop in his briefs filed in the district court or this Court, the legal elements of any federal constitutional claim or specify which facts establish that his federal constitutional rights were violated.

For example, Horner did not allege or attempt to prove that any of his expressions amounted to protected speech under the First Amendment and that adverse employment actions were taken against him in retaliation for his exercise of First Amendment rights. *See Savage v. Gee*, 665 F.3d 732, 738 (6th Cir. 2012). Moreover, Horner did not attempt to develop any argument that he had a property right in continued employment that was protected by due process, *see Singfield v. Akron*

7

*Metro. Hous. Auth.*, 389 F.3d 555, 565–66 (6th Cir. 2004), and in any event the "Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 350 (1976).

Horner also did not allege that he is a member of a suspect class protected by the Equal Protection Clause of the Fourteenth Amendment. *C.f.*, *e.g.*, *Alexander v. Ohio State Univ. College of Social Work*, 429 F. App'x 481, 483–84 (6th Cir.) (per curiam) (resolving race discrimination and retaliation claims filed by African-American professor against public university under § 1983, Equal Protection Clause, and Title VII), *cert. denied*, 132 S.Ct. 528 (2011). Even if Horner's brief reference to the Equal Protection Clause signified an attempt to state an equal protection claim under a "class-of-one" theory, the Supreme Court has held that the "class-of-one theory of equal protection has no application in the public employment context[.]" *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 607 (2008).

We note additional deficiencies in Horner's general assertion that Mayor Evans failed to train and supervise Chief Klein. A claim for failure to supervise is actionable under § 1983 only if the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officer[]." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoted case and internal quotation marks omitted). Horner did not produce any evidence explaining the Mayor's responsibilities to supervise and train Chief Klein. He also did not identify any alleged unconstitutional conduct of Chief Klein or present evidence to show that Mayor Evans authorized, approved, knowingly acquiesced, or participated in any unconstitutional conduct of Chief Klein.

Further, by naming Chief Klein and Mayor Evans as defendants in their official capacities, Horner effectively sued the City. *See Lambert*, 517 F.3d at 439–40. To prevail against the City, Horner must establish that the injury about which he complains was caused by an unconstitutional government policy or custom. *See id.* at 439 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Horner did not mention his obligation to satisfy *Monell*, nor did he produce any evidence of a government policy or custom to establish liability of the City.

Finally, Horner did not include in his complaint a retaliation claim under Title VII. Rather than demonstrate a federal basis for his claims, Horner focused solely on the alleged violation of Ohio's anti-retaliation statute. Ohio Rev. Code Ann. § 4112.02 (West 2012). State law by itself, however, cannot supply the foundation for a federal constitutional violation. *Smith v. City of Salem*, 378 F.3d 566, 578 (6th Cir. 2004). Therefore, Horner failed to state any federal claim under § 1983.

## B. Retaliation claim

Despite the lack of a federal claim, the district court ruled on Horner's Ohio state-law retaliation claim pursuant to the court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Therefore, we review the grant of summary judgment to the defendants on that claim. Because Horner presents only circumstantial evidence, we examine his Ohio retaliation claim "under the same *McDonnell Douglas/Burdine* evidentiary framework" that is used to assess Title VII discrimination claims. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008); *Hollingsworth v. Time Warner Cable*, 812 N.E.2d 976, 987 (Ohio Ct. App. 2004).

To establish a *prima facie* case of retaliation, Horner must show that: (1) he engaged in protected activity under Title VII; (2) the defendants knew of his protected activity; (3) thereafter, the defendants took adverse employment action against him; and (4) there is a causal connection

9

between the protected activity and the adverse employment action. *See Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008). Horner satisfied each element of the *prima facie* case.

The evidence establishes that Horner engaged in protected activity, even though his underlying claim of sexual harassment is without merit. Horner wholly failed to show that Chief Klein subjected him to severe and pervasive harassment based on sex and that the harassment created an objectively intimidating, hostile, or offensive work environment that unreasonably interfered with his work performance. *See Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009). Yet, "a violation of Title VII's retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579–80 (6th Cir. 2000). Horner engaged in protected activity by opposing what he believed to be unlawful sexual harassment by Chief Klein when he made complaints to Louderback and when he filed an administrative charge of discrimination with the OCRC. *See Crawford v. Metro. Gov't of Nashville and Davidson County*, 555 U.S. 271, 274 (2009) (explaining Title VII's "opposition" and "participation" clauses).

Horner also satisfied the second element of the *prima facie* case by showing that Chief Klein knew Horner complained to Louderback about the Granata incident and that Chief Klein also knew that Horner filed an administrative charge with the OCRC. The third element is met because there is no dispute that Horner suffered materially adverse employment actions, such as disciplinary suspension with loss of pay, demotion, and termination of employment. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Finally, to establish a causal connection, Horner must offer sufficient evidence to raise an inference that his protected activity was the likely reason for the adverse employment action.

10

*Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007). Horner has shown a temporal proximity between his protected activity and the disciplinary actions taken against him. This temporal proximity, coupled with other evidence in the record suggesting that Chief Klein may have been motivated, at least in part, by retaliatory animus against Horner is enough to show the causal connection necessary to complete the *prima facie* case.[2] *See id.* With the *prima facie* case completed, a presumption of retaliation arises in Horner's favor. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

The burden of production thus shifts to the defendants to show a legitimate, non-discriminatory reason for the adverse employment actions taken against Horner. *See Michael*, 496 F.3d at 597. Chief Klein and Mayor Evans met their burden by producing evidence that Horner's dishonesty and his violations of departmental policies warranted disciplinary action, including written writeups, suspension without pay, and demotion. The defendants claimed that Horner was ultimately fired from his position for a non-disciplinary reason because he did not return to work as instructed after exhausting all of his leave.

Under the *McDonnell Douglas/Burdine* framework, Horner must carry the final burden to show that the legitimate, non-discriminatory reasons for the adverse employment actions were a pretext for unlawful retaliation. *See Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 838 (6th

---

[2]Horner contends for the first time on appeal that Chief Klein engaged Mayor Evans in a "cat's-paw" termination of Horner's employment. This phrase "refers to a situation in which a biased subordinate, who lacks decisionmaking power, influences the unbiased decisionmaker to make an adverse [employment] decision, thereby hiding the subordinate's discriminatory intent." *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 586 n.5 (6th Cir. 2009). *See also Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1192–94 (2011); *Bobo v. UPS, Inc.*, 665 F.3d 741, 755 (6th Cir. 2012). Because Horner did not raise this theory below, we will not consider it. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 555 (6th Cir. 2012).

Cir. 2012). At this stage of the analysis, the presumption of retaliation has dissipated, and Horner must demonstrate that his employer's proffered non-discriminatory reasons were not the true reason for the employment decisions, but rather were a pretext for retaliation. *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011) (ADEA case). Horner can do this by showing that the proffered reasons had no basis in fact, that they did not actually motivate the challenged conduct, or that they were insufficient to warrant the challenged conduct. *See id.*

Viewing the evidence in a light most favorable to Horner, we conclude that he failed to generate a genuine issue of material fact for trial on pretext and thus, he will be unable to carry his ultimate burden of persuasion to show that unlawful retaliation was the real reason for the adverse employment actions taken against him. *See id*. at 812. Horner did not provide proof that the disciplinary actions had no basis in fact or that they were insufficient to warrant his suspension, demotion, and termination. Horner also did not establish that Chief Klein and Mayor Evans were motivated by an intent to retaliate against him rather than by any need to enforce departmental rules and policies. Because Horner did not rebut the defendants' proof, summary judgment in favor of Chief Klein and Mayor Evans is appropriate.

We note errors in two aspects of the district court's reasoning. First, the district court improperly imported the defendants' proffered legitimate, non-discriminatory reasons for the adverse employment actions into the court's analysis of the causation element of the *prima facie* case. *See id.* at 813 ("One common misapplication [of *McDonnell Douglas/Burdine*] is the tendency to push all of the evidence into the prima facie stage and ignore the purpose for and application of the three stages.") Second, the district court made credibility determinations and factual findings on disputed issues, actions not available to the court at the summary judgment stage. *See Anderson*, 477 U.S.

12

at 255. That said, we agree with the district court's ultimate determination that there are no genuine issues of material fact for trial.

## IV. CONCLUSION

For these reasons, Chief Klein and Mayor Evans are entitled to summary judgment as a matter of law. Accordingly, we AFFIRM.