NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0800n.06

No. 14-5226

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 23, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| STEPHEN LEWIS, JR., | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | WESTERN DISTRICT OF |
| | ) | KENTUCKY |
| NORFOLK SOUTHERN RAILWAY | ) | |
| COMPANY, et al., | ) | O P I N I O N |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:    BOGGS and COOK, Circuit Judges; and QUIST, District Judge.[*]

   **QUIST, District Judge.**

   Stephen Lewis, Jr. contends that his former employer, Norfolk Southern Railway

Company (NSRC), and one of its foremen, James Roskovics, discriminated against him based on

his race when they removed a job posting and later re-posted the job with an additional

requirement that he did not satisfy. He further alleges that the decision of NSRC and

Roskovics's replacement, Shirrell Jones, Jr., to terminate Lewis's employment after he pled

guilty to drug possession was based on racial discrimination. The district court granted summary

judgment in favor of NSRC, Roskovics, and Jones. For the following reasons, we affirm.

_____

[*] The Honorable Gordon J. Quist, United States District Judge for the Western District of
Michigan, sitting by designation.

## I. BACKGROUND

In 2004, Lewis began working as an apprentice carman in the mechanical department of NSRC's Youngstown Yard. During his apprenticeship, Lewis gained experience outside as a "yard man" and inside as a "shop man." In 2007, Lewis was promoted to a full-fledged carman. In that position, Lewis worked outside in the yard.

On June 1, 2009, Roskovics, the Senior General Foreman of the mechanical department where Lewis worked, issued six job bulletins. Three of the bulletins created new carman positions inside the shop, and three of the bulletins eliminated carman positions in the yard. On June 4, 2009, Roskovics cancelled all six bulletins after speaking with his supervisor. Lewis had bid on one of the positions inside the shop before the bulletins were withdrawn. Chris Hiser, a white male who was less senior than Lewis, told Lewis that he had bid as well.

Lewis claims that, shortly before the bulletins were cancelled, he overheard Hiser having a telephone conversation. After Hiser hung up the telephone, he allegedly told Lewis: "I screwed you out of a job." Lewis claims that Hiser said he had been speaking to Roskovics, and that the bulletins issued on June 1, 2009 were being cancelled.

On September 4, 2009, Roskovics posted a bulletin for a carman position inside the shop. The description of the position was almost identical to the description of the shop position from the June 1, 2009 bulletin except that it included the additional requirement that applicants possess a commercial driver's license (CDL). Lewis did not apply for the position because he did not have a CDL. Hiser, who had a CDL, applied for and was awarded the position.

On October 8, 2009, Lewis was arrested and charged with a drug-related crime. After learning of the arrest from a police officer, NSRC arranged for Lewis to take a drug test. Lewis decided to enter into NSRC's drug and alcohol rehabilitation program rather than take the test.

After Lewis returned from the rehabilitation program, he agreed to random drug testing, and almost a year passed without incident. On June 23, 2011, Lewis pled guilty to drug possession. In July 2011, Jones learned of Lewis's guilty plea when performing a routine background check. NSRC decided to remove Lewis from service and charge him with conduct unbecoming an employee for violating NSRC's off-the-job drug activity policy, which provided:

> Employees who are convicted in connection with incidents involving off-the-job drug activity will be considered in violation of this policy and subject to dismissal.

The policy defined drug as a "prohibited or controlled substance as defined by law."

Following his termination, Lewis challenged his dismissal before a Public Law Board of Arbitration, which affirmed NSRC's decision. Lewis then filed a complaint in state court against NSRC, Roskovics, and Jones, alleging claims of race discrimination in violation of 42 U.S.C. § 1981 and the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010 *et seq.* The case was later removed to federal court. After extensive discovery, the district court granted summary judgment in favor of NSRC, Jones, and Roskovics. Lewis filed this timely appeal, arguing that there were issues of material fact and that the district court incorrectly applied the law.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo. *Chapman v. United Auto Workers Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012). "Summary judgment is

appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 748 (6th Cir. 2012). The burden to show that there is no genuine issue of material fact falls upon the party seeking summary judgment. *Id.* In evaluating the evidence, we must draw all reasonable inferences in favor of the non-moving party. *Donald v. Sybra, Inc.*, 667 F.3d 757, 760 (6th Cir. 2012). To survive a summary judgment motion, the non-moving party must present sufficient evidence for a reasonable jury to find for the non-moving party. *Id.*

## III. DISCUSSION

Because Lewis does not present direct evidence of discrimination, his claims are evaluated under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008); *see also Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000) (noting that claims under the Kentucky Civil Rights Act are evaluated under the same standards as federal discrimination claims). A plaintiff must first establish a prima facie case by showing: "(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White*, 522 F.3d at 391. Once a plaintiff has made out a prima facie case, the burden shifts to the employer to present a legitimate, non-discriminatory reason for the adverse employment action. *Griffin v. Finkbeiner*,

689 F.3d 584, 592-93 (6th Cir. 2012).  If the employer does so, the burden then shifts back to the plaintiff to demonstrate that the employer's proffered reason was pretext.  *Id.* at 593.

A plaintiff can show pretext by demonstrating that the employer's stated reasons (1) had no basis in fact; (2) did not actually motivate the employer's decision; or (3) were insufficient to motivate the employer's action.  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).  To defeat summary judgment, a plaintiff must "produce sufficient evidence from which a jury could reasonably reject [the employer's] explanation" for the adverse employment action.  *Id.*  "An employer's changing rationale for making an adverse employment decision can be evidence of pretext."  *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996).

## A.     The June Bulletin

Lewis argues that the district court erred in concluding that he failed to rebut NSRC's assertion that it made a business decision to withdraw the June 1, 2009 bulletin based on changed circumstances.  For the first time on appeal, Lewis asserts a "cat's paw" theory of liability based on Hiser's statement following the June 1, 2009 telephone call with Roskovics.  Because Lewis did not raise this theory below, we will not consider it.  *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) ("[A]n argument not raised before the district court is waived on appeal to this Court."); *see also Horner v. Klein*, 497 F. App'x 484, 490 n.2 (6th Cir. 2012) (refusing to consider a cat's-paw-theory argument raised for the first time on appeal).

## B.     The September Bulletin

Lewis challenges the district court's conclusion that he failed to rebut NSRC's asserted rationale for including the CDL requirement in the September job posting, arguing that there

were disputed issues of fact that precluded summary judgment. NSRC and Roskovics asserted that they added the CDL requirement because they knew that Paul Jackson, a carman with a CDL, was going to retire by the end of 2009, and they wanted to ensure that NSRC would have sufficient carmen to operate NSRC's crane truck in case of an emergency. The district court found that this constituted a legitimate business reason for adding the CDL requirement, and that Lewis failed to show that it was pretext.

Lewis argues that the district court's decision was in error because NSRC failed to show that it learned of Jackson's impending retirement after issuing the June bulletin. According to this argument, if NSRC knew that Jackson was retiring but failed to include a CDL requirement in the bulletin issued in June, that would demonstrate that the requirement was a sham. NSRC has shown, however, that it posted the jobs in the June bulletin to address a backup in the shop, while the September job posting was intended to ensure that there were sufficient carmen who possessed CDLs during each shift. Thus, even if NSRC knew of Jackson's impending retirement when it issued the June bulletin, the failure to include a CDL requirement in that bulletin would not demonstrate pretext.

Lewis further argues that NSRC's explanation for including the CDL requirement has changed throughout the course of the litigation. "Shifting justifications over time calls the credibility of those justifications into question." *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002). Lewis has failed, however, to show that NSRC's justifications have shifted. NSRC has consistently asserted that it needed a carman with a CDL to operate a large

6

truck in case of emergencies. The statements that Lewis identifies do not indicate otherwise. Accordingly, this argument fails.

## C.    Lewis's Termination

Lewis takes issue with the district court's conclusion that Lewis failed to present evidence that he was treated differently from a similarly-situated employee, and thus did not make out a prima facie case regarding his termination. Lewis argues that Thomas Shibley, a Caucasian employee who pled guilty to manslaughter after killing his wife in a drunk-driving accident, was a similarly-situated employee.

Even if Lewis could make out a prima facie case by showing that Shibley was a similarly-situated employee, NSRC has satisfied its burden by asserting that it terminated Lewis because he violated its off-the-job drug-activity policy. The only evidence that Lewis has offered to rebut that explanation is the fact that NSRC did not terminate Shibley. As NSRC has explained, however, it does not have a policy against off-the-job alcohol consumption. Even if Shibley's criminal offense was "more serious" than Lewis's, as Lewis contends, it did not violate a specific NSRC policy. Thus, the fact that NSRC continued to employ Shibley following his guilty plea does not cast doubt on NSRC's explanation for its decision to terminate Lewis. Accordingly, Lewis has not rebutted NSRC's stated reason for terminating his employment.

## IV.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.